UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20CR700MTS |
| | ) |
| DAWUANE LAMONT RHODES, JR., | ) |
| | ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Dawuane Lamont Rhodes, Jr., represented by defense counsel John Lynch, and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to the **lesser-included** offense in Count One of the indictment, the Government agrees to move for dismissal as to Counts Two and Three at the time of sentencing. The Government also agrees that no further federal prosecution will be brought in this District relative to the defendant's conspiracy to distribute and possession with intent to distribute

1

methamphetamine from January, 2018 until the date of the indictment, of which the Government is aware at this time

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that the defendant may request a sentence below the U.S. Sentencing Guidelines range ultimately determined by the Court, and can ask this Court to impose a sentence as low as sixty (60) months imprisonment. The United States may request a sentence as high as one hundred forty-four (144) months imprisonment. The Court is neither a party to nor bound by the plea agreement and sentencing recommendations contained herein.

The defendant also agrees, pursuant to the guilty plea to Count One, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: $15,005.00 U.S. currency, $6,930.00 U.S. currency, $23,820.00 U.S. currency, $70,000.00 U.S. currency, assorted jewelry, 2016 Dodge Charger Hellcat, 2015 Mercedes Sprinter Van and a 2015 Dodge Charger Hellcat. Defendant agrees to forfeit all of defendant's interest in all items seized by law-enforcement officials during the course of their investigation and will not contest the forfeiture of such items. Defendant admits that all United States currency, weapons, property and assets seized by law enforcement officials during their investigation constitute the proceeds of defendant's illegal activity, were commingled with illegal proceeds, or were used to facilitate the illegal activity. Defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the Government and to rebut any claims of nominees and/or alleged third party owners. Defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

3. **ELEMENTS:**

As to Count One, the defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 846, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(1) Two or more people reached an agreement to commit the crime of distributing and possessing with intent to distribute methamphetamine;

(2) The Defendant voluntarily and intentionally joined in the agreement; and

(3) At the time the Defendant joined in the agreement, the Defendant knew the purpose of the agreement.

4. **FACTS:**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On October 8, 2020 a Deputy Sheriff from the Geary County, Kansas Sheriff's Office stopped a van for a traffic violation on eastbound Interstate 70 near Mile Marker 300 in Geary County, Kansas. The deputy developed probable cause to search the van. During the search of the van, the deputy located two duffle bags containing approximately forty-five (45) bundles of suspected methamphetamine, weighing approximately 100 pounds. One of the bundles was opened and the substance inside was field tested. The substance tested positive for the presence of methamphetamine, a Schedule II controlled substance drug. DEA agents from the Kansas City office informed DEA St. Louis of the circumstances and facts related to the traffic stop and the seizure of the bulk methamphetamine.

SA Bryson Wheeler interviewed the driver of the van who ultimately agreed to cooperate. He was the sole occupant of the van, admitted that he had picked up a bulk shipment of methamphetamine in Colorado and told investigators that the methamphetamine was intended to be delivered to Demond McDaniels. According to the driver, he was supposed to contact McDaniels by phone upon his return to St. Louis, Missouri and McDaniels would then come to the driver's business at 6767 Olive Boulevard, University City, Missouri, to pick up methamphetamine. The driver agreed to participate in the controlled delivery of the methamphetamine to McDaniels.

Later on October 8, 2020 at approximately 7:30 p.m., under the direct supervision and control of agents the driver contacted McDaniels by cellular telephone through the Face Time Audio Application. Investigators watched the driver dial McDaniels' telephone number and observed the name come up on the phone contacts as "Stump." Agents witnessed the following conversation: the driver told McDaniels that he was at their pre-arranged meet location (6767 Olive Boulevard, a garage owned by the driver) and was ready for McDaniels to come and pick up the bulk shipment of methamphetamine. Agents listened as McDaniels told the driver that he was busy and would send his "brother" (later identified as Defendant Dawuane Lamont Rhodes, Jr.) to pick up the methamphetamine on McDaniel's behalf. McDaniels told the driver that Rhodes would have cash to pay him for transporting the methamphetamine. The driver made several more calls to McDaniels, insisting that he hurry up as he had to return the rental vehicle and did not want to be charged for an additional day. During these conversations, McDaniels assured the driver that his brother was on his way.

4

At approximately 8:30 p.m., the driver told agents (who were inside the building with him), "He's here." Simultaneously, agents conducting surveillance around the exterior of the building radioed and advised that they observed a black in color Dodge Charger Hellcat backing up to the garage door at the building. The driver opened the overhead garage door of the building and allowed the driver of the Hellcat (later discovered to be Rhodes) to back into the building. Once the Dodge was fully inside the garage, the driver closed the overhead garage door. Agents had instructed the driver to give them a signal when Rhodes exited his vehicle and took custody of the bulk methamphetamine. He prematurely gave agents the pre-arranged signal. Agents moved in and arrested Rhodes before he exited his vehicle. Rhodes was the sole occupant of the Dodge. Rhodes and his vehicle were searched. During the search of his vehicle, $15,005 in U.S. currency was found, strapped together with rubber bands. The U.S. currency was located on the front passenger seat of the vehicle, next to a loaded Draco assault-type weapon. A loaded Glock .45 caliber handgun was located in the side door pocket of the driver's side of the vehicle.

After Rhodes was arrested, agents witnessed the driver receiving multiple phone calls from McDaniels, who was trying to confirm that his brother had retrieved the methamphetamine. Still cooperating with the investigation, the driver advised McDaniels that Rhodes had never shown up. McDaniels then agreed to come to the garage to pick "it" up. The driver insisted that he also get paid and McDaniels agreed. Agents then concealed themselves inside and around the building and waited for McDaniels to arrive. A short time later, McDaniels arrived at the garage, accompanied by a female (later identified as his girlfriend J.M.). He was observed exiting his vehicle and he then entered the building. With the back door of the van open, McDaniels began to retrieve one of

5

the suitcases containing the bulk shipment of methamphetamine.[1] McDaniels pulled one of the suitcases out of the van and as he began to retrieve a second suitcase, agents emerged from hiding and arrested McDaniels without incident. Agents seized a cell phone, an assortment of jewelry and $6,930 in U.S. currency from McDaniels. On November 6, 2020 the DEA applied for and received a federal search warrant for a total of three cell phones seized from McDaniels during the investigation.

McDaniels was advised of his rights pursuant to *Miranda*. McDaniels declined to make a statement. While he was being transported to the St. Charles County jail for processing, McDaniels spontaneously uttered, in the presence and hearing of DEA agents, "I have a good lawyer." McDaniels was asked if he had a job and how could he afford to pay for a good lawyer? McDaniels replied under his breath, "Because I sell drugs." When asked to repeat that statement, McDaniels laughed and said, "Nah, I said I sell dogs."

A subsequent consent search of McDaniel's home revealed the following:

1. A white "Gotze" shopping bag filled with U.S. currency, located in a kitchen cabinet (the currency was later counted and totaled $23,820);

2. A money counter inside of a camo duffel bag, located inside the living room closet;

3. A black Sentry Safe in the closet of the upstairs master bedroom;

4. A Smith and Wesson M&P .45 handgun in the closet of the master bedroom.

The DEA applied for and obtained a federal search warrant for the black Sentry safe. The warrant was approved on October 15, 2020 and executed the same date. Agents found that the safe contained $70,000 in U.S. currency, which was subsequently seized.

---

[1] Agents had previously removed most of the methamphetamine from the suitcases, prior to the controlled delivery at the garage.

In sum and for purposes of relevant conduct related to the United States Sentencing Guidelines, the Defendant is responsible for approximately 39.5 kilograms of a mixture or substance containing a detectible amount of methamphetamine.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than 3 years.

## 6. U.S. SENTENCING GUIDELINES(2018 MANUAL):

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

a. **Chapter 2 Offense Conduct**:

(1) **Base Offense Level**: The parties agree that the base offense level is 36, as found in Section 2D1.1(c)(2). The parties agree that the quantity of methamphetamine for which the defendant is accountable, including relevant conduct, is at least 15 kilograms but less than 45 kilograms, resulting in the agreed Base Offense Level.

(2) **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply:

The parties agree that 2 levels should be added pursuant to Section 2D1.1(b)(2), because a firearm was possessed.

7

b. **Chapter 3 Adjustments:**

(1) **Acceptance of Responsibility**: The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the Government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the Government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(2) **Other Adjustments**: The parties have no further agreement regarding any other adjustments.

d. **Estimated Total Offense Level**: The parties estimate that the Total Offense Level is 35. No matter the advisory Guidelines Range, it is understood by this agreement that the defendant will seek a sentence as low as sixty (60) months and the United States will seek a sentence as high as one hundred forty-four (144) months.

e. **Criminal History**: The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

  **f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made above but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

  **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

  **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

  **(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining the applicable Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than

9

Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation

may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

d. **Mandatory Special Assessment**: Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e. **Possibility of Detention**: The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f. **Fines and Costs of Incarceration and Supervision**: The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

g. **Forfeiture**: The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim

to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following: $15,005.00 U.S. currency, $6,930.00 U.S. currency, $23,820.00 U.S. currency, $70,000.00 U.S. currency, assorted jewelry, 2016 Dodge Charger Hellcat, 2015 Mercedes Sprinter Van and a 2015 Dodge Charger Hellcat. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

### 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond

a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly,

threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

10/31/2022
Date

PAUL J. D'AGROSA (#36966MO)
Assistant United States Attorney

14

10/31/22
Date

_____
DAWUANE LAMONT RHODES, JR.
Defendant

10/31/2022
Date

_____
JOHN LYNCH
Attorney for Defendant